# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BEVERLY HOWARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.: 07-CV-2951 |
| ) | |
| HEALTH CARE SERVICE CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Health Care Service Corporation's Motion for Summary Judgment (DE 28), filed on February 5, 2008. Defendant has moved for summary judgment on the basis that *pro se* Plaintiff Beverly Howard has released the claims she alleges in her complaint. For the following reasons, the Court grants Defendant's motion.

**I.    Background**

On May 25, 2007, Plaintiff Beverly Howard filed a complaint against Health Care Service Corporation (HCSC), alleging that she was fired because of her age in violation of the Age Discrimination Employment Act ("ADEA"), 29 U.S.C. § 621, and because of an alleged disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101. On November 27, 2007, Defendant filed its Amended Answer and Additional Defenses.

Plaintiff worked as an Expense Analyst in the Corporate Travel Services department at HCSC's office in Chicago, Illinois. In May 2006, HCSC announced a "reduction-in-force" for Plaintiff's department, and Plaintiff was one of the individuals selected for layoff. In connection with the reduction-in-force, Plaintiff and other employees selected for layoff were offered a severance package in exchange for signing a separation agreement. On May 30, 2006, after thirty-

three years of service, Plaintiff signed a document entitled "Separation Agreement-Enhanced," and HCSC terminated her employment. The agreement contained the following language:

> In exchange for the Separation Package, You and anyone claiming through or on behalf of You, releases HCSC, its affiliates, successors, assigns, and all of their past and present employees, officers, directors, and agents from any and all claims that You may have to the maximum extent permitted by law. This release includes, but is not limited to, any and all claims under local, state or federal law, whether statutory or common law, and the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Americans with Disabilities Act, the Employee Retirement Income Security Act of 1974, the Family and Medical Leave Act, the Worker Adjustment and Retraining Notification Act, the Texas Commission on Human Rights Act and the Illinois Human Rights Act, and the Oklahoma Anti-Discrimination Act.

The agreement advised Plaintiff to consult with an attorney prior to signing the agreement, indicated that she had forty-five days after receiving the agreement to consider whether to sign the agreement, allowed her to revoke the agreement within seven calendar days after she signed it, and contained a clause integrating all prior agreements into the separation agreement as written. The agreement also had two exhibits: (A) a document entitled "Separation Package - Enhanced," which set forth her hire and termination dates and the consideration she could elect under the separation agreement; and (B) two "Age Reports" which listed the positions "affected" and "non-affected" by the reduction-in-force, as well as the ages of the persons holding each position.

In response to Defendant's summary judgment motion, Plaintiff did not dispute that she signed a separation agreement that included this general release. In addition, although she was served with a Notice to Pro Se Litigant Opposing Summary Judgment (DE 31), Plaintiff did not file any supporting affidavits or any brief; rather, she filed a response that disputes two paragraphs of Defendant's Statement of Undisputed Material Facts. Plaintiff's unsupported response states that she was first informed of the reduction-in-force in March 2006, when Defendant provided her with

a draft of the separation agreement, and also provides some details about her alleged disability, a form of cancer identified as Multiple Myeloma, which was diagnosed in September 1995.

## II.     Analysis

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe. Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine

3

issue for trial. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Seventh Circuit has emphasized the importance of Local Rule 56.1 and has required strict compliance with the rule, see *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002), even for *pro se* litigants, see *Greer v. Board of Educ. of the City of Chicago, Illinois*, 267 F.3d 723, 727 (7th Cir. 2001); *Banks v. Archer/American Wire*, 2005 WL 2007227, *1 (N.D. Ill. August 17, 2005).

Because Plaintiff's response does not comply with Local Rule 56.1, the Court's analysis is limited to the facts contained in Defendant's Statement of Undisputed Material Facts. *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000) (holding that district court properly refused to consider non-moving party's affidavits where non-moving party's response to moving party's statement of facts was "entirely non-compliant" with summary judgment local rule). However, Plaintiff's failure to comply with Local Rule 56.1 does not result in the automatic grant of summary judgment. The Court must still determine whether Defendant is entitled to judgment as a matter of law, viewing the facts in the light most favorable to Plaintiff. *Johnson v. Gudmundson,* 35 F.3d 1104, 1112 (7th Cir. 1994) (stating "even where many or all of the material facts are undisputed, the court still must ascertain that judgment is proper 'as a matter of governing law'").

Defendant's sole argument in support of its summary judgment motion is that by signing the separation agreement prior to her termination, Plaintiff released any claims she may have had under the ADEA or the ADA. A person may release potential claims under the ADEA if the release is "knowing and voluntary." See 29 U.S.C. § 626(f)(1). Such a release is knowing and voluntary only if: (1) it is written to be understood by the average recipient; (2) it specifically refers to ADEA

4

claims; (3) it waives only pre-existing claims; (4) it gives the recipient at least forty-five days to consider it and seven days to revoke it after it is signed; (5) the person signing it receives consideration for it other than that to which she is already entitled; (6) the person signing it is told in writing to consult a lawyer before doing so; and (7) the person signing it receives a notice written to be understood by the average recipient of any available severance program that identifies the individuals to whom the program applies, the eligibility factors for the program, and any applicable time limits, as well as a list of "the job titles and ages of all individuals eligible or selected for the program and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program," 29 U.S.C § 626(f)(1); see *Oubre v. Entergy Operations, Inc.,* 522 U.S. 422, 427, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998) (holding that release of ADEA claims is knowing and voluntary only if it complies with the statutory requirements).

Similarly, a person may validly release potential ADA claims only if she does so knowingly and voluntarily. *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1129 (7th Cir. 1997); *Baker v. Potter*, 2005 WL 843169 (N.D. Ill. Jan. 20, 2005) Because HCSC seeks to enforce Plaintiff's waiver of her civil rights, HCSC bears the burden of showing that Plaintiff consented knowingly and voluntarily to the settlement agreement. *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.,* 110 F.3d 431, 438 (7th Cir. 1997) ("*Pierce II*"). Plaintiff, however, bears the burden of production to come forward with "specific evidence sufficient to raise a question as to the validity of the release." *Id.* Among the factors the Court considers to determine whether such a release is knowing and voluntary are:

> (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the settlement; (3) the clarity of the agreement; (4) the amount of time the employee had for deliberation before signing the release; (5) whether the employee actually read the release and considered its terms before

5

> signing it; (6) whether the employee was represented by counsel or consulted with an attorney; (7) whether the consideration given in exchange for the waiver exceeded the benefits to which the employee was already entitled by contract or law; and (8) whether the employee's release was induced by improper conduct on the defendant's part.

*Pierce v. Atchison, Topeka & Santa Fe Ry. Co.,* 65 F.3d 562, 571 (7th Cir. 1995) ("*Pierce I*").

Here, the initial question is whether Plaintiff has come forward with any specific evidence that challenges whether the waiver – as to either the ADEA or ADA claim – was knowing and voluntary. Although she now appears to regret her decision to sign the separation agreement, Plaintiff has not come forward with any evidence that raises a question as to the validity of the release. The release Plaintiff signed states: "In exchange for the Separation Package, You and anyone claiming through or on behalf of You, releases HCSC, its affiliates, successors, assigns, and all of their past and present employees, officers, directors, and agents from *any and all* claims that You may have to the maximum extent permitted by law" (emphasis added), language that the Seventh Circuit has described as "clear and unequivocal." See *Pierce I,* 65 F.3d at 568. Further, it is undisputed that the release specifically mentions ADEA and ADA claims, instructs her to seek legal advice before signing it, and allows her forty-five days to consider the release and seven days to revoke it after signing it.

Plaintiff also received consideration for signing the separation agreement. Courts consider the terms of the agreement containing the release provision to determine whether the plaintiff received any consideration for the release beyond the consideration to which the plaintiff was otherwise entitled by contract or by law. See *Pierce I,* 65 F.3d at 570. Plaintiff received the full forty weeks of salary continuation and health and dental benefits promised her in return for signing the separation agreement and releasing the claims asserted in this action. Notably, she filed this action on May 25, 2007, after accepting the full forty weeks salary and benefits under the agreement.

Finally, Plaintiff received written notice of the severance program that identified the "affected" and "non-affected" individuals to whom the program applied, as well as a list of the job titles and ages of all individuals eligible or selected for the program and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program. Because the undisputed evidence establishes that Plaintiff's waiver of her ADEA and ADA claims was knowing and voluntary, Defendant is entitled to judgment as a matter of law on Plaintiff's claims.

### III. Conclusion

For the foregoing reasons, the Court grants Defendant Health Care Service Corporation's Motion for Summary Judgment (DE 28) and terminates this case.

Dated: May 2, 2008  _____
Robert M. Dow, Jr.
United States District Judge